UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIE M. ULCHAK,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | CASE NO. 2:15-cv-00882-DWC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the denial of Plaintiff's applications for Widows Insurance Benefits ("WIB") and Supplemental Security Income Benefits ("SSI"). The parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 6.

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") erred by finding Plaintiff did not have any severe medically determinable impairments.

ORDER ON PLAINTIFF'S COMPLAINT - 1

1  Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g)

2  for further proceedings.

## PROCEDURAL& FACTUAL HISTORY

On February 11, 2011, Plaintiff filed applications for WIB and SSI. *See* Dkt. 9, Administrative Record ("AR") 232-240. Plaintiff alleges she became disabled on June 1, 2001, due to anxiety and obsessive compulsive disorder. *See* AR 239, 253. Plaintiff's applications were denied upon initial administrative review on May 17, 2011, and on reconsideration on December 9, 2011. *See* AR 143. A hearing was held before an ALJ on January 11, 2013, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 63.

On February 8, 2013, the ALJ found Plaintiff was not disabled within the meaning of Sections 202(e), 223(d), and 1614(a)(3)(A) of the Social Security Act. AR 56. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 11, 2015, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On June 2, 2015, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.

Plaintiff argues the denial of benefits should be reversed and remanded for further proceedings, because the ALJ erred by finding Plaintiff's anxiety, obsessive-compulsive disorder, and personality disorder were not severe impairments at Step Two of the sequential evaluation. Dkt. 12, p.1.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

## DISCUSSION

I.  Whether the ALJ Erred by Failing to Consider Plaintiff's Obsessive-Compulsive Disorder and Anxiety Disorder to be Severe Impairments at Step Two of the Sequential Evaluation

Plaintiff challenges the ALJ's Step Two findings. The ALJ found Plaintiff had the medically determinable impairments of anxiety disorder, obsessive compulsive disorder ("OCD"), depression, personality disorder, high cholesterol, dermatitis, and early degenerative joint disease of the left hip. AR 45. However, the ALJ did not find any of these medically determinable impairments to be "severe," either singly or in combination. AR 45. The ALJ reached this conclusion by giving little weight to the opinions of two examining psychiatrists, and by finding Plaintiff's subjective complaints incredible. AR 45-53.

Defendant employs a Five-Step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. At Step Two of the sequential evaluation, the ALJ must determine if a claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520, § 416.920.[1] A medically determinable impairment is one which results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic

---

[1] A claimant has the burden to prove both the existence of a severe medically determinable impairment by a preponderance of the evidence, and to produce evidence to meet this burden. 20 C.F.R. §§ 404.1505(a), 404.1512(a) and (c), 416.905(a), 416.912(a) and (c); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (*citing* 42 U.S.C. § 423(d)(1)(A)).

techniques." Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, *1. A medically determinable impairment is considered "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(a)(4)(iii) & (c), 416.920(a)(4)(iii) & (c); *see also* SSR 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85-28, 1985 WL 56856 *3.

The Step Two inquiry, however, is merely a threshold determination as to whether a claimant has raised a "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). *See also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (noting the Step Two determination is a *de minimis* screening device used to dispose of groundless claims). "Ample authority cautions against a determination of nondisability at step two." *Ortiz v. Commissioner of Social Sec.*, 425 Fed.Appx. 653, 655 (9th Cir. 2011) (*citing Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005), *Smolen*, 80 F.3d at 1290. An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290. "If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with [Step Two]" SSR 85-28, 1985 WL 56856 at *4.

1    In *Webb v. Barnhart*, the Ninth Circuit articulated a test to determine whether an ALJ
2 properly finds a claimant to be not disabled at Step Two. First, an ALJ must find the medical
3 evidence of record "clearly establish[es]" a claimant did not have a medically severe impairment
4 or combination of impairments. *Webb*, 433 F.3d at 686-87. Second, an ALJ must support this
5 finding with substantial evidence. *Id.*
6    Following the test articulated in *Webb*, this Court finds the ALJ did not have substantial
7 evidence to find the record clearly established Plaintiff did not have a severe impairment.
8 Plaintiff submitted evidence establishing she had the medically determinable impairments of
9 OCD, anxiety disorder, and personality disorder since at least 2001. *See* AR 352-365 370-383,
10 437-448, 486-607. Among the evidence Plaintiff submitted were the medical opinions of
11 Lynnette Fischer, Ph.D., LP and David Widlan, Ph.D. Both Dr. Fischer and Dr. Widlan
12 examined Plaintiff and conducted mental status examinations. AR 440-41, 528-31.
13    Dr. Fischer also administered two diagnostic inventories, the Minnesota Multiphasic
14 Personality Inventory, Second Edition ("MMPI") and the Millon Clinical Multiaxial Inventory,
15 Third Edition. ("MCMI"). AR 441-48. Based upon the clinical interview, testing data, and
16 Plaintiff's reports, Dr. Fischer diagnosed Plaintiff with major depressive disorder, generalized
17 anxiety disorder, OCD, and avoidant personality disorder. AR 448. Based on her clinical
18 interview, testing data, and subjective reports, Dr. Fischer also opined Plaintiff's symptoms from
19 her various mental health impairments were severe and would impact her ability to work. AR
20 440.
21    Dr. Widlan similarly diagnosed Plaintiff with OCD, and noted significant deficits in
22 Plaintiff's concentration and insight. AR 529-30. Dr. Widlan also noted Plaintiff's
23 noncompliance with her medication regimen was best construed as a symptom of her "obsessive-
24

compulsive tendencies." AR 531. Though Dr. Widlan opined Plaintiff would "cognitively be able to accept instruction from a supervisor, he also concluded Plaintiff's presentation "as easily overwhelmed" and her numerous difficulties with task completion would translate to an employment setting, as well as issues associated with persistence and reliability. AR 531. These reports were consistent with Plaintiff's subjective testimony, as well as her longitudinal history of OCD. *See, e.g.*, AR 72-87, 352-365 370-383, 437-448, 486-607.[2] Though these reports were contradicted by other evidence relied upon by the ALJ, the conflict and ambiguity in the record demonstrates Plaintiff's claim is at least debatable; thus, there is not substantial evidence demonstrating the record clearly establishes Plaintiff's condition is not severe. *See Franklin v. Astrue*, 2012 WL 3059407, *3 (W.D. Wash. 2012). *Compare Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir.2005) (finding the claimant offered no objective medical evidence in support of the claim his medically determinable impairments were severe).

The facts of the *Webb* case are instructive. In *Webb*, the ALJ found the claimant did not have a severe impairment at Step Two, despite the claimant's objective medical evidence, the claimant's subjective complaints, and the observations of the claimant's physicians. *Webb*, 433 F.3d at 687-88. In so doing, the ALJ relied upon his assessment of the claimant's credibility as well as the relative weight he assigned to the medical opinion evidence. *Id.* However, the *Webb* court found the claimant had offered objective medical evidence demonstrating the existence of an impairment which could have more than a minimal effect on the claimant's ability to work. *Id.* at 686-87. The *Webb* court considered the ALJ's reasons for finding Plaintiff's subjective

---

[2] It is also notable Plaintiff had previously applied for—and received—disability benefits in 2001 due to her OCD. AR 249, 363. These benefits were subsequently discontinued, but apparently not due to an improvement in Plaintiff's condition; rather, the benefits were suspended due to financial ineligibility as a result of an inheritance. AR 84.

1 complaints not credible, but found they were insufficient when balanced against "Webb's

2 doctors' contemporaneous observations, some objective tests and Webb's subjective

3 complaints." *Id.* at 687. As for the ALJ's evaluation of the medical opinion evidence, the court

4 observed:

> [T]here is no inconsistency between Webb's complaints and his doctors' diagnoses sufficient to doom his claim as groundless under the de minimis standard of step two. Webb's clinical records did not merely record the complaints he made to his physicians, nor did his physicians dismiss Webb's complaints as altogether unfounded. To the contrary, the doctors' reports and test results usually corresponded with the afflictions Webb perceived, particularly his hypertension, the side effects of his treatment and the interaction of some drugs (his pain killers) with others (his hypertension medication) in his therapeutic regimen. There is not, in this instance, the total absence of objective evidence of severe medical impairment such as was the case in *Ukolov v. Barnhart* . . . where we affirmed a finding of no disability at step two when even the claimant's doctor was hesitant to conclude that any of the claimant's symptoms and complaints were medically legitimate. *Id*. at 1006.

12 *Webb v. Barnhart*, 433 F.3d 683, 687-88 (9th Cir. 2005).

13 Applying the same analytical framework to this case requires a similar result. The ALJ

14 found Plaintiff not credible for the following three reasons: the possibility Plaintiff's application

15 was motivated by secondary gain; Plaintiff's inconsistent treatment history and the allegedly

16 suspicious timing of her medical treatment with her application for disability benefits; and

17 Plaintiff's past work history. AR 49-50. As in *Webb*, these are not sufficiently clear and

18 convincing reasons when balanced against Plaintiff's doctors' contemporaneous observations,

19 objective tests and Plaintiff's subjective complaints. First, the ALJ discounted Plaintiff's

20 complaints in part because he suspected Plaintiff's application for disability benefits was

21 motivated by secondary gain; however, the only evidence the ALJ offered in support of this

22 conclusion was "[Plaintiff] waited to re-file her application for disability benefits until she had

23 no other source of income." AR 48. The very purpose of applying for Social Security benefits is

24

the receipt of pecuniary gain; without other evidence of exaggeration or malingering, the suggestion of secondary gain is not a legally sufficient reason to discredit Plaintiff. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014); *Ratto v. Secretary*, 839 F.Supp. 1415, 1428-29 (D. Or. 1993); *Kish v. Astrue*, 2012 WL 3763643 (W.D. Wash. 2012). *Cf. Lester*, 81 F.3d at 831 (the fact examining psychologist's report was "clearly obtained by the claimant's attorney for the purpose of litigation" does not provide a legitimate basis for rejecting the medical opinion, absent actual evidence of impropriety).

Second, the ALJ also noted Plaintiff's, inconsistent medical treatment, and the allegedly suspicious timing of her treatment with her application for disability benefits. AR 49-50.[3] But, Plaintiff's diminished insight is documented in the record, as are opinions and evidence that Plaintiff's sporadic treatment and noncompliance with a medication regime are a symptom of her mental impairments. *See* AR 437, 529, 531. "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regenniter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (*quoting Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Third, the ALJ observed Plaintiff had a diverse work history as a telemarketer, waitress, nurse's aide, and bell ringer, despite claiming to have had OCD her entire life. AR 48 However, Plaintiff's earnings history reflects only nominal income in almost all years, and only one year in which she earned over $6000.00 dollars. AR 248. This fails to demonstrate Plaintiff was able to work, despite her ongoing OCD, at a level of substantial gainful activity for a significant period of time. *See* AR 48, 248; *Gatliff v. Commissioner of Soc. Sec. Admin.*, 172 F.3d 690, 693 (9th Cir. 1999) ("A finding that a claimant is able to engage in

---

[3] An ALJ is allowed to draw inferences logically flowing from the evidence. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). However, an ALJ may not speculate. *See* SSR 86-8, 1986 WL 68636, at *8.

substantial gainful activity . . . requires a determination that the claimant can hold whatever job he finds for a *significant period of time*.") (emphasis added).

As for the medical opinion evidence, the ALJ contends Dr. Fischer and Dr. Widlan based their opinions solely on Plaintiff's subjective complaints. This misunderstands the nature of Dr. Fischer and Dr. Widlan's mental status examinations and their overall evaluation. As this Court has previously noted:

> [E]xperienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination [MSE] allows the organization, completion and communication of these observations. . . . Like the physical examination, the mental status examination is termed the *objective* portion of the patient evaluation."

*Blessing v. Astrue*, 2013 WL 316153, at *6 (W.D. Wash. 2013) (*quoting* Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination, 3-4 (Oxford University Press 1993). "Anyone can have a conversation with a patient, but appropriate knowledge, vocabulary, and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, at 3.

In any event, as in *Webb*, the issues the ALJ identified with Dr. Widlan and Dr. Fischer's opinions are not "sufficient to doom [Plaintiff's] claim as groundless under the de minimis standard of step two." *Webb*, 433 F.3d at 687. Dr. Widlan and Dr. Fischer's reports are not only consistent with Plaintiff's complaints, but are also supported by objective medical evidence, including mental status examinations and test results. *See* AR 440-41, 528-31. This evidence is sufficient for Plaintiff to have met her burden to present evidence of a severe impairment. *See, e.g.*, *Webb*, 433 F.3d at 687; *Ortiz*, 425 Fed.Appx. at 655; *Franklin*, 2012 WL 3059407, at *3.

This is not to say, on the record before this Court, Plaintiff will be able to succeed in proving she is disabled and entitled to benefits. However, "[i]f there is doubt as to the existence

of a severe impairment, either because the impairment was medically indeterminable or not significant, the disability analysis ought to continue because the severity is too unclear to decide the claim at the low threshold of step two." *Franklin*, 2012 WL 3059407, *3. The ALJ lacked substantial evidence to find the record clearly established Plaintiff did not have a medically severe impairment. Thus, the ALJ committed harmful error by ending the sequential evaluation at Step Two.

## CONCLUSION

Based on the above stated reasons and the relevant record, the Court finds the ALJ erred by failing to find Plaintiff had the severe medically determinable impairments of OCD, anxiety disorder, and personality disorder at Step Two of the sequential evaluation. On remand, the ALJ should find Plaintiff has the severe medically determinable impairments of OCD, anxiety disorder, and personality disorder at Step Two. The ALJ should proceed to Steps Three, Four, and Five, as appropriate, reevaluate and reweigh all of the medical opinion evidence, and reweigh Plaintiff's credibility. The ALJ should also develop the record as needed. Judgment should be for Plaintiff and the case should be closed.

Dated this 22nd day of December, 2015.

David W. Christel
United States Magistrate Judge